A94A2055. STOKES et al. v. CANDLER HOSPITAL, INC.
(453 SE2d 502)

McMURRAY, Presiding Judge.

Plaintiff Connie Stokes brought this tort action on behalf of her deceased four-year-old son, Justin D. Stokes, alleging that defendant Candler Hospital, Inc. ("the hospital") and its agents negligently failed to diagnose that the boy required emergency surgery. As a separate count to the complaint, plaintiff alleged that the hospital breached an independent duty of care for which it was "strictly liable" under the provisions of 42 USC § 1395dd, in that "Justin Stokes' condition was not appropriately screened and [he] was not medically stable at the time of his discharge . . ." from the hospital's emergency room.

The hospital denied the material allegations and, after a period of discovery, moved for partial summary judgment as to any tort claim under the federal law, based upon the following undisputed chronology: Plaintiff brought her son to the emergency room of the hospital around 2:00 a.m. on April 22, 1991. The child's noted symptoms were that he was vomiting, in abdominal pain, and was wild-eyed. He was examined by C. Patrick Ng, M.D., who initially prescribed injections of "atropine and phernergan" to stop the child's vomiting and to help with any stomach cramps. Dr. Ng then referred the child to a hospital pediatric surgeon, Robert D. Gongaware, M.D., for a "surgical consult. . . ." At approximately 4:00 a.m., Dr. Gongaware examined the child, "diagnosed [his] condition as viral gastroenteritis," and concluded that the child did "not [have] a surgical abdomen," i.e., surgery was not necessary. Dr. Ng ordered no further testing "after the child was cleared by a pediatric surgeon." According to medical records, the child was discharged at 4:42 a.m. and his condition on discharge was noted as "improved." Plaintiff was instructed in writing to "see [the child's regular physician] Dr. Morrison today[, and to] return if child gets worse." At approximately 9:30 a.m., when she went to awaken the child, plaintiff discovered he was dead. The immediate cause of death, "acute ischemic necrosis," is undisputed. In the opinion of the pathologist from the Georgia Bureau of Investigation, Justin Stokes "had a congenital malformation of the mesentery, which resulted in it assuming a very small, abbreviated form. As a consequence, the virtual entirety of the intestines rotated upon themselves, resulting in obstruction of the arteries and veins passing through this abbreviated mesenteric segment. This obstruction resulted in thrombosis (clotting) of the veins in this area, causing the

intestines to die (infarct)."

The trial court granted the hospital's motion for partial summary judgment and this appeal followed. In four related enumerations, plaintiff contends the trial court erred because fact questions remain as to whether the hospital fulfilled its duties under 42 USC § 1395dd, the Emergency Medical Treatment & Active Labor Act, ("the Act").[1]

*Held*:

42 USC § 1395dd (a) imposes on certain hospitals with emergency rooms the duty to "provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available . . . , to determine whether or not an emergency medical condition . . . exists." If any individual comes to a hospital and the hospital determines that the individual has an emergency condition, 42 USC § 1395dd (b) (1) (A) imposes upon the hospital the further duty to "stabilize the medical condition," or to transfer the individual to an appropriate medical facility. See *Brooks v. Maryland Gen. Hosp.*, 996 F2d 708, 709 (4th Cir. 1992). "The term 'to stabilize' means . . . to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual. . . ." 42 USC § 1395dd (e) (3) (A). The term "transfer" includes the discharge of an individual. 42 USC § 1395dd (e) (4).

In the case sub judice, there is no question that the hospital screened the child and treated the immediate symptoms of his emergency medical condition with medications intended to stop his vomiting and to alleviate suspected stomach cramps. We agree with plaintiff that the Act does not require a showing that her child was treated unequally due to suspected indigency. However, we do not agree that a claim for damages under the Act is made out solely by proof of an unfortunate result. 42 USC § 1395dd (a) "requires a hospital to develop a screening procedure designed to identify such critical conditions that exist in symptomatic patients and to apply that screening procedure uniformly to all patients with similar complaints." *Baber v. Hosp. Corp. of America*, 977 F2d 872, 879 (4th Cir. 1992). "[A] hospital fulfills the 'appropriate medical screening' requirement when it conforms in its treatment of a particular patient to its standard screening procedures." *Gatewood v. Washington Healthcare Corp.*, 933 F2d 1037, 1041 (D.C. Cir. 1991). See also *Brooks v. Maryland Gen. Hosp.*, 996 F2d 708, 710 (I), supra. "[T]he Act is intended not to

---

[1] Also known as the "Anti-Patient Dumping Act." See *Baber v. Hosp. Corp. of America*, 977 F2d 872, 873, fn. 1 (4th Cir. 1992).

ensure each emergency room patient a correct diagnosis, but rather to ensure that each is accorded the same level of treatment regularly provided to patients in similar medical circumstances." *Gatewood v. Washington Healthcare Corp.*, 933 F2d 1037, 1041, supra. The Act "does not create a standard of care to be followed, [and] does not create liability for malpractice based on a breach of [a] national or community standard of care; at the core, it aims at disparate treatment." *Brooks v. Maryland Gen. Hosp.*, 996 F2d 708, 713 (III), supra. "The provisions of [the Act] do not preempt any State or local law requirement, except to the extent that the requirement directly conflicts with a requirement of this section." 42 USC § 1395dd (f). That the emergency room physicians in the case sub judice might have misdiagnosed the true nature and peril of the child's emergency condition does not make out a cause of action against the hospital pursuant to the requirements of 42 USC § 1395dd (a), where it is undisputed that the child was screened, was examined by two physicians, and was given medications to stop his vomiting and to ease his pain before being discharged with instructions to see the child's regular pediatrician and with the further instruction to "return if [the] child gets worse."

Nevertheless, plaintiff contends that summary judgment was erroneous because the hospital improperly discharged Justin Stokes before he had been stabilized as required by 42 USC § 1395dd (b) (1). This contention is without merit.

"The hospital's responsibility under the statute ends when it has stabilized the individual's [emergency] medical condition. See *Brooker v. Desert Hosp. Corp.*, 947 F2d 412, 415 (9th Cir. 1991)." *Green v. Touro Infirmary*, 992 F2d 537, 538 (III), 539 (5th Cir. 1993). "Stabilization" of an emergency medical condition under the Act refers only to those emergency medical conditions actually diagnosed. "[T]he plain language of the statute dictates a standard requiring actual knowledge of the emergency medical condition by the hospital staff. [Cits.]" *Baber v. Hosp. Corp. of America*, 977 F2d 872, 883, supra. "If the emergency nature of the condition is not [correctly] detected, the hospital cannot be charged with failure to stabilize a known emergency condition." *Cleland v. Bronson Health Care Group*, 917 F2d 266, 271 (6th Cir. 1990). In the case sub judice, it is undisputed that when the child was discharged he had stopped vomiting and was drowsy (albeit delirious) or else "[h]e was sleeping most of the time," due to the injections prescribed by Dr. Ng. The medical records note the child's condition on discharge as "improved." Since the observed emergency medical condition had been stabilized, the hospital had fulfilled its duties under 42 USC § 1395dd. Any failure to diagnose the congenitally defective bowel and the resulting infection is not actionable as a failure to stabilize

before discharge under the requirements of 42 USC § 1395dd (b) (1). The trial court correctly granted the hospital's motion for partial summary judgment.

*Judgment affirmed. Pope, P. J., and Smith, J., concur.*

DECIDED JANUARY 12, 1995 —
RECONSIDERATION DENIED JANUARY 24, 1995 —

*Jones, Boykin & Associates, Noble L. Boykin, Jr.,* for appellants.
*Oliver, Maner & Gray, William P. Franklin, Jr., Beckmann & Pinson, William H. Pinson, Jr., Bouhan, Williams & Levy, Joseph A. Mulherin III, Brennan & Wasden, Wiley A. Wasden III,* for appellee.